UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CHRISTOPHER D. LESTER AND
MONICA G. LESTER            CIVIL ACTION NO.
                            3:16-cv-00909-JAM

      VS.

LIBERTY MUTUAL FIRE
INSURANCE COMPANY           SEPTEMBER 7, 2017


          DEPOSITION OF: MONICA G. LESTER

APPEARANCES:

Attorneys for the Plaintiffs:

   TOLISANO & DANFORTH, LLC
      18 Main Street
      P.O. Box 676
      Ellington, Connecticut 06029
      (860) 871-2422
      bdanforth@tanddlaw.com
   BY: BRIAN D. DANFORTH, ESQUIRE


Attorneys for the Defendant:

   HOWD & LUDORF
      65 Wethersfield Avenue
      Hartford, Connecticut 06114-1190
      (860) 249-1361
      kleary@hl-law.com
   BY: KIERAN W. LEARY, ESQUIRE

Also present:  Christopher D. Lester

                  Wendy J. Leard
              Registered Merit Reporter
                  CSR # 00039


   Job No. CS2687237

EXHIBIT 9

. . . Deposition of MONICA G. LESTER, taken on behalf of the defendant in the hereinbefore entitled action, pursuant to the Federal Rules of Civil Procedure, before Wendy J. Leard, RMR, duly qualified Notary Public in and for the State of Connecticut, held at the law offices of Howd & Ludorf, 65 Wethersfield Avenue, Hartford, Connecticut, commencing at 1:48 p.m., on Thursday, September 7, 2017.

S T I P U L A T I O N S

It is hereby stipulated and agreed by and among counsel for the respective parties that all formalities in connection with the taking of this deposition, including time, place, sufficiency of notice and the authority of the officer before whom it is being taken may be and are hereby waived.

It is further stipulated and agreed that objections, other than as to form, are reserved to the time of trial and that the reading and signing of the deposition are hereby waived.

EXHIBIT 9

It is further stipulated and agreed that the proof of the qualifications of the notary public before whom the deposition is being taken is hereby waived.

MONICA G. LESTER, Deponent, having first been sworn, testified as follows:

DIRECT EXAMINATION

BY MR. LEARY:

Q    Good afternoon, Mrs. Lester.

I am Attorney Kieran Leary.  I represent Liberty Insurance Corporation.

You just sat through your husband's deposition, correct?

A    Correct.

Q    And let me ask you, Have you ever had your deposition taken before?

A    No.

MR. LEARY:  And we're on usual stips, right?

MR. DANFORTH:  Correct, yes.

BY MR. LEARY:

Q    Let's just go over the same ground rules I went over with your husband.

EXHIBIT 9

In the interest of having a clean record, please allow me to finish my questions; I'll do the same with you with your answers.

If at any point you need to take a break, please let me know; I'll be happy to let you do so.

It's not an endurance test.  I'm not going to block the wall and tell you "get by me," but I would just ask if there is a pending question, that you go ahead and answer that before taking a break.

If at any point you don't understand something I ask, please ask me to rephrase it.

But if you answer a question that's asked, I'm going to assume that you understood the question that's posed.

Is that fair?

A    Yes.

Q    Okay.  What's your full name, ma'am?

A    Birth certificate:  Monica Mary Gonder.

Social Security card:  Monica G. Lester.

Q    And you've been married since 1983, correct?

A    Yes, 37 years.

Q    All right.  And you're currently insured

by Liberty Insurance Corporation, correct?

A    Correct.

Q    Do you know who your insurance company was prior to Liberty?

A    I want to say Middletown -- Middlesex, Middle --

Q    That's fine.

A    Yeah.

Q    And do you know how long you've been insured by Liberty?

A    I think a year short of how long he's worked with Dell EMC.

Q    Gotcha.

And have you made a claim with Middlesex regarding your foundation?

A    Not that I'm aware of.

Q    Okay.  And other than yourself, your husband, and your children, has anyone lived in your house since the time you purchased it?

A    No.

Q    And you've lived in the home since 2005?

A    Yes.

Q    And you previously owned 105 Farmstead Road in East Hartford, correct?

A    Correct.

Q    And I'll present you with what's been marked as Exhibit 1.  You saw these in your husband's deposition.

These are the blueprints for your home, correct?

A    Correct.

Q    And you saw these shortly after purchase of the home in 2005?

A    Correct.

Q    And I show you what's been marked as Exhibit 2.

This is a Residential Property Condition Disclosure Report, correct?

A    Correct.

Q    And it's for your former home, correct?

A    Correct.

Q    And is your signature on the final page there?

A    Yep.  Yes, correct.

Q    That's fine.

And here, marked as Exhibit 3, is an appraisal report for your home, and you're listed as the client, correct?  Your husband and you?

A    Correct.

Q    And did you see this document in

EXHIBIT 9

connection with obtaining financing for your home?

A    I probably -- yes.  I had to have seen it because I had to have signed something and I had to look this all over, so yes.

Do I remember it?  Vaguely.

Q    Okay.  And I'm showing you what's been marked as Exhibit 4.

This is a Residential Property Condition Disclosure Report prepared by the seller of your home, correct?

A    Correct.

Q    Do you recall seeing this document?

A    I don't recall, but I must have, you know.

Q    Okay.  I'm showing you what's been marked as Exhibit 5.

If you flip to the third page, there will be a report by Bill Neal.

Have you seen this report before?

A    I do not remember seeing it.

Q    Okay.  That's fine.

And I'm showing you what's been marked as Exhibit 6.  It's a proposal by Don Childree.

Do you recall seeing this?

A    Oh, yes.

Q    Did you meet Don Childree?

A    No, I did not.

Q    And showing you what's been marked as Exhibit 7, this is a Home Inspection Report prepared by Bill Neal dated November 1, 2005, prepared for Monica Lester, correct?

A    Correct.

Q    Do you recall seeing this on or around November 1, 2005?

A    I must have, but I don't recall.

Q    If I can direct your attention to the third page, please.

A    Okay.

Q    Is that your signature there?

A    That is my signature.

Q    And it's dated November 1, 2005, right?

A    Correct.

Q    All right.  And I'll show you what's been marked as Exhibit 8.

This is your responses, dated August 18, 2017, to interrogatories and production requests, correct?

A    Correct.

Q    And if you flip to the third-to-last page, is that your signature?

A    Yes, it is.

Q    And if you flip to the back side of that page, is that your husband's signature?

A    Oh, yes.

Q    Do you currently own any other properties other than your house?

A    No.

Q    Have you ever owned any properties other than your house and your home in East Hartford?

A    No.

Q    What's your highest level of educational attainment?

A    Two years of college.

Q    And where did you attend college?

A    University of Michigan, and then I switched over to Oakland Community College.

Q    So you're from Michigan originally?

A    Correct.

Q    What do you do for work?

A    I work at Skechers.

Q    Okay.  And what do you do there?

A    I'm the assistant manager.

Q    And how long have you been at Skechers?

A    Two weeks.

Q    Okay.  And how are you liking it there?

A    It's a piece of cake.

Q   And what were you doing before Skechers?

A   I worked at Sears in Auburn.

Q   Okay.  And how long were you at Sears?

A   A little over two years.

Q   And did you transition from Sears to Skechers directly, or was there a gap?

A   There was a gap.

Q   Okay.  And how long were you not employed?

A   Four weeks.

Excuse me a minute.  My brother died.

Q   I'm sorry.

MR. LEARY:  We'll go off the record for a second.

(A recess was held off the record.)

BY MR. LEARY:

Q   And where were you before Sears?

A   Job Lot.

Q   Could you spell that, please?

A   Ocean State Job Lot.

Q   And how long were you there?

A   Five years.

Q   Okay.  And where were you before Job Lot?

A   Oh, for crying out loud.

Let me see.  Before Job Lot, Belden's jewelry store.

EXHIBIT 9

Before Belden's jewelry store, Noah's.

And before Noah's, Toys R Us.

And before that, I was a stay-at-home mom.

Q   Gotcha.   Okay.

Have you ever been a party to a lawsuit other than the instant matter?

A   No.

Q   Have you ever been convicted of a felony?

A   No.

Q   How about a misdemeanor?

A   No.

Q   Have you ever filed for bankruptcy?

A   No.

Q   Have you ever had a property in which you have an ownership in subject to foreclosure proceedings?

A   No.

Q   And you purchased this home in 2005, right?

A   Correct.

Q   And it was built in '98 or '99, to the best of your knowledge?

A   To the best of my knowledge.

Q   And that's just gleaned from . . .

A   I think it was the paperwork, but I am

EXHIBIT 9

trying to remember.

I think, when we bought the house, they said it was, like, six years old.

Q   Gotcha.

Do you know who built your home?

A   No, I do not.

Q   Do you know the names of any individuals or companies that were involved in the construction of your home?

A   No, I do not.

Q   And your basement has never been finished, correct?

A   Correct.

Q   And have you ever had any kind of siding over your exterior concrete walls?

A   Siding, no.

Q   So you've been able to see them since you purchased the property, right?

A   Correct.

Q   And Bill Neal did an inspection prior to your purchase, correct?

A   Correct.

Q   Have you had any other home inspectors prepare a home inspection report for your property?

EXHIBIT 9

A    Not to my knowledge, no.

Q    Okay.  And other than individuals that your husband identified, have you had any contractors or engineers at your property?

A    No.

Q    Have you ever rented your property?

A    No.

Q    Have you ever listed your property for sale?

A    No.

Q    And you haven't made any addition to your property since purchasing it?

A    No.  Are you kidding?  I can barely keep the house clean now; put on another room, and I'm in trouble.

Q    And have you ever acted as a general contractor and constructed a home?

A    No.

Q    Do you have any sort of residential construction background?

A    No.

Q    Any engineering background?

A    No.

Q    Do you know who provided the concrete for your foundation?

A    No.

Q    Do you know who poured the concrete for your foundation?

A    No.

Q    Have you had any problems with water infiltration in your basement?

A    No.

Q    Have you spoken to anyone from Liberty Mutual regarding your claim?

A    No.

Q    Have you ever met -- strike that.

You met Mr. Neal in connection with your home inspection, correct?

A    Yes.

Q    But did you meet him when he came out to look at your house 2015?

A    No.

Q    Have you ever talked to George Colli?

A    No.

Q    Have you ever talked to anyone in the news regarding your claim?

A    No.

Q    Do you have any photographs of your foundation walls taken prior to 2015?

A    No.

Q    Okay.   And you haven't made any repairs to
your foundation walls, correct?

A    Correct.

Q    And you haven't shored your walls,
correct?

A    Correct.

Q    And you haven't replaced your foundation,
correct?

A    Correct.

Q    And you haven't had to relocate from the
home due to any problems with the foundation,
right?

A    Correct.

Q    Has anyone told you that you should
relocate from your home due to the foundation
condition?

A    No.

Q    Has anyone told you when you'll have to
relocate from your home due to the condition of
the foundation?

A    No.

Q    Have you asked?

A    Have I asked?

Q    Right.

A    I haven't talked to anybody.   He does.

EXHIBIT 9

Q    Gotcha.

And from what I understand from your husband's testimony, you essentially just use your basement space for storage; is that fair?

A    That's fair.

Q    Do you have a washer and dryer down there?

A    No.

Q    Okay.  And did you notice any cracks in your foundation prior to 2015?

A    I noticed some cracks because there was some settling, I thought.

Q    Right.

A    That's what I thought it was.  That's it.

Q    All right.  And do you recall when you noticed that?

A    No.  I just -- it's just one of those things that you catch out of the -- you know, the side of your eye when you walk down.

You just say, "Oh, that's something," and then it goes right out of your brain.

Q    Gotcha.

Do you know if your property has footings?

A    Not that I know of.

Q    Do you know what a "footing" is?

A    A rat wall.

Q    A "rat wall" you said?

A    (There was no audible response.)

They call them a "rat wall" in Michigan.

Q    Okay.  Could you expound on what a "rat wall" is?  Because I don't know what a "rat wall" is.

A    It's an old term that my uncles used.

It's footing that goes underneath a house and to support it if you're not putting a basement in.

Q    Okay.

A    They always called it a "rat wall"; something I picked up when I was young.

Q    Okay.

A    But do I know how to do one, or do I know really what it -- no.  It's just terminology.

Q    And you don't know whether your house has footings, correct?

A    No.

Q    Okay.  Do you know if the cracks in your foundation have gotten worse since 2015?

A    No.  I avoid looking at them.

Q    Okay.  What part of Michigan are you from?

A    Lower peninsula.

Q    Okay.  I have family in Mishawaka.

A    What?

Q    Mishawaka?  Doesn't ring a bell?

A    Mishawaka?  No.

Are you saying it right?

Q    Probably not.

A    Mishawaka.

Q    Have you ever painted your foundation walls?

A    No.

Q    And you still occupy your home, correct?

A    Correct.

Q    And did you ever review your policy from Liberty Insurance Corporation?

A    Just to see the top page.  Anything further than that, no.

Q    Okay.  But you received it prior to each policy term; is that correct?

A    Correct.

Q    Have you ever looked up "foundation" in a dictionary?

A    No.

Q    Did you ever look up "retaining wall" in a dictionary?

A    No.

Q    What about Britannica.com, have you

EXHIBIT 9

visited that site?

A   No.

Q   How did you learn about rat walls and when?

A   Rat walls?

Q   Yes.

A   When I was growing up.  I was probably seven or eight.

Q   Right.  Okay.

A   My uncles use it.  They do a lot of -- they worked construction.  Not building construction, but road construction.

Q   Okay.  And you didn't report this claim to Liberty Mutual personally, did you?

A   No.

Q   Did you see any of this news coverage prior to reporting your claim?

A   No.

Q   When's the first time that you learned that there was kind of extensive news coverage about foundation issues?

A   After I found out I had the foundation issue, then I started paying attention.

Q   Gotcha.

Local news is a thing of the past, right?

A    (There was no audible response.)

Q    Do you know if your property has been condemned by a building inspector?

A    No.  No, it hasn't been condemned.

Q    All right.  Have you received any estimates for repairs other than from Mr. Childree?

A    No.

Q    Do you know anyone who has a similar claim?

A    I know of people who have, but not anybody that I know.

Q    Know personally, right?

A    Well, like I said, the neighbors, that's it.

Q    Right.

Do you attend these meetings for the Connecticut Coalition Against Crumbling Basements?

A    I've attended a couple of them.

Q    Okay.  Other than what we're doing today, have you given any testimony under oath regarding the condition of your foundation?

A    No.

Q    Do you know anyone else who's photographed your foundation on your behalf other than

EXHIBIT 9

Mr. Neal?

A    No.

Q    Other than this or the ice dam claim, have you had had any other insurance claims aside from health insurance claims?

A    The ice for the house, that's it.

Q    What about any personal injury lawsuits or claims?

A    I don't think there was anything filed.

Q    Okay.  But you had some kind of claim --

A    There was Caitlyn's car accident --

MR. LESTER:  And my accident.

A    -- and his accident.

BY MR. LEARY:

Q    Okay.  But no lawsuits filed?

A    No.

Q    Okay.  And you plan to file paperwork to have your property reassessed for tax purposes?

A    Yes.

Q    And tomorrow you plan to do that?

A    Well, he is, yes.

Q    All right.

A    I'll be at work.

Q    Gotcha.

Okay.  And are you aware of any

EXHIBIT 9

documentation you have from the Department of Consumer Protection?

A   No.

Q   And do you have copies of anything you've submitted to the Department of Consumer Protection?

A   No.  He took care of all that.

Q   Gotcha.

MR. LEARY:  Okay.  I don't have anything further.

Thank you.

MR. DANFORTH:  Okay.  You're all set.

(The witness was dismissed, and the deposition was concluded at 2:09 p.m.)

I N D E X

---------------------------------------------------------

WITNESS                           MONICA G. LESTER

---------------------------------------------------------

DIRECT EXAMINATION BY MR. LEARY                     3

---------------------------------------------------------

EXHIBIT              DESCRIPTION                  PAGE

---------------------------------------------------------


        (There were no exhibits marked.)


              *  *  *  *  *  *  *

EXHIBIT 9

STATE OF CONNECTICUT

COUNTY OF TOLLAND

I, Wendy J. Leard, a Notary Public for the State of Connecticut, do hereby certify that the deposition of MONICA G. LESTER, a witness, was taken before me pursuant to the Federal Rules of Civil Procedure, at the law offices of Howd & Ludorf, 65 Wethersfield Avenue, Hartford, Connecticut, commencing at 1:48 p.m., on Thursday, September 7, 2017.

I further certify that the deponent was first sworn by me to tell the truth, the whole truth, and nothing but the truth, and was examined by counsel, and her testimony stenographically reported by me and subsequently transcribed as hereinbefore appears.

I further certify that I am not related to the parties hereto or their counsel, and that I am not in any way interested in the event of said cause.

Dated at Somers, Connecticut, this 9th day of September, 2017.

Wendy J. Leard

Notary Public

My Commission Expires May 31, 2022

ERRATA SHEET
VERITEXT LEGAL SOLUTIONS
800-567-8658
ASSIGNMENT NO. CS2687237
CASE NAME: Lester, Christopher, Et Al. v. Liberty Mutual Fire
Insurance Company
DATE OF DEPOSITION: 9/7/2017
WITNESS' NAME: Monica G. Lester

PAGE/LINE(S)/     CHANGE                REASON
____/_____/_____/_____
____/_____/_____/_____
____/_____/_____/_____
____/_____/_____/_____
____/_____/_____/_____
____/_____/_____/_____
____/_____/_____/_____
____/_____/_____/_____
____/_____/_____/_____
____/_____/_____/_____
____/_____/_____/_____
____/_____/_____/_____
____/_____/_____/_____
____/_____/_____/_____
____/_____/_____/_____
____/_____/_____/_____
____/_____/_____/_____
____/_____/_____/_____
____/_____/_____/_____
____/_____/_____/_____
____/_____/_____/_____
____/_____/_____/_____
____/_____/_____/_____
____/_____/_____/_____
____/_____/_____/_____
____/_____/_____/_____

_____
          Monica G. Lester
(Notary not required in California)
SUBSCRIBED AND SWORN TO
BEFORE ME THIS_____DAY
OF_____, 2017.


_____
     NOTARY PUBLIC
MY COMMISSION EXPIRES_____

Veritext Legal Solutions

290 W. Mt. Pleasant Ave. - Suite 3200

Livingston, New Jersey 07039

Toll Free: 800-227-8440   Fax: 973-629-1287

September 21, 2017

To: Brian D. Danforth, Esq

Case Name: Lester, Christopher, Et Al. v. Liberty Mutual Fire

Insurance Company

Veritext Reference Number: 2687237

Witness:  Monica G. Lester       Deposition Date:  9/7/2017

Dear Sir:

Enclosed please find a deposition transcript.  Please have the witness

review the transcript and note any changes or corrections on the

included errata sheet, indicating the page, line number, change, and

the reason for the change.  Have the witness' signature at the bottom

of the sheet notarized except in California where they are signing

under penalty of perjury and forward the errata sheet back to us at

the address shown above.

If the jurat is not returned within thirty days of your receipt of

this letter, the reading and signing will be deemed waived.

Sincerely,

Production Department

Encl.

Cc: Kieran W. Leary, Esq.

[& - civil]                                                                                              Page 1

**&**

& 1:10,15 2:6 24:7

**0**

00039 1:22
00909 1:3
06029 1:11
06114-1190 1:16
07039 26:2

**1**

1 6:2 8:4,8,15
105 5:23
18 1:10 8:19
1983 4:22
1:48 2:8 24:9

**2**

2 6:11
2005 5:21 6:8 8:4
  8:8,15 11:18
2015 14:16,24 16:9
  17:21
2017 1:5 2:9 8:20
  24:10,22 25:22
  26:4
2022 24:25
21 26:4
249-1361 1:17
2687237 26:7
290 26:1
2:09 22:14

**3**

3 6:21 23:5
31 24:25
3200 26:1
37 4:24
3:16 1:3

**4**

4 7:7

**5**

5 7:15

**6**

6 7:22
65 1:16 2:7 24:8
676 1:11

**7**

7 1:5 2:9 8:3 24:10

**8**

8 8:18
800-227-8440 26:2
800-567-8658 25:2
860 1:12,17
871-2422 1:12

**9**

9/7/2017 25:3 26:8
973-629-1287 26:2
98 11:21
99 11:21
9th 24:21

**a**

able 12:17
accident 21:11,12
  21:13
acted 13:16
action 1:3 2:3
addition 13:11
address 26:17
afternoon 3:11
agreed 2:13,21 3:1
ahead 4:10
al 25:3 26:6
allow 4:2
answer 4:10,14
answers 4:3
anybody 15:25
  20:11
appearances 1:8

appears 24:16
appraisal 6:22
aside 21:4
asked 4:14 15:22
  15:23
assignment 25:2
assistant 9:21
assume 4:15
attainment 9:11
attend 9:13 20:17
attended 20:19
attention 8:10
  19:23
attorney 3:12
attorneys 1:9,14
auburn 10:2
audible 17:2 20:1
august 8:19
authority 2:17
ave 26:1
avenue 1:16 2:7
  24:8
avoid 17:22
aware 5:16 21:25

**b**

back 9:1 26:16
background 13:20
  13:22
bankruptcy 11:12
barely 13:13
basement 12:11
  14:6 16:4 17:9
basements 20:18
bdanforth 1:12
behalf 2:2 20:25
belden's 10:24
  11:1
bell 18:2
best 11:22,23
bill 7:17 8:4 12:20

birth 4:20
block 4:8
blueprints 6:4
bottom 26:14
bought 12:2
box 1:11
brain 16:20
break 4:4,11
brian 1:13 26:5
britannica.com
  18:25
brother 10:10
building 19:11
  20:3
built 11:21 12:5

**c**

caitlyn's 21:11
cake 9:25
california 25:21
  26:15
call 17:3
called 17:12
car 21:11
card 4:21
care 22:7
case 25:3 26:6
catch 16:17
cause 24:20
cc 26:25
certificate 4:20
certify 24:4,11,17
change 25:5 26:13
  26:14
changes 26:12
childree 7:22,25
  20:7
children 5:18
christopher 1:2,20
  25:3 26:6
civil 1:3 2:4 24:7

EXHIBIT 9

[claim - first]                                                                    Page 2

claim  5:14 14:9,21
  19:13,17 20:10
  21:3,10
claims  21:4,5,8
clean  4:1 13:14
client  6:23
coalition  20:18
college  9:12,13,15
colli  14:18
commencing  2:8
  24:9
commission  24:25
  25:25
community  9:15
companies  12:8
company  1:5 5:3
  25:3 26:6
concluded  22:14
concrete  12:15
  13:24 14:2
condemned  20:3,4
condition  6:12 7:8
  15:16,19 20:22
connecticut  1:1,11
  1:16 2:6,8 20:18
  24:1,4,9,21
connection  2:15
  7:1 14:12
constructed  13:17
construction  12:9
  13:20 19:11,12,12
consumer  22:2,5
contractor  13:17
contractors  13:4
convicted  11:8
copies  22:4
corporation  3:13
  5:1 18:13
correct  3:15,16,22
  4:23 5:1,2,24,25
  6:5,6,9,13,14,15

6:16,19,23,24 7:10
  7:11 8:5,6,16,21
  8:22 9:17 11:20
  12:12,13,19,21,22
  14:13 15:2,3,5,6,8
  15:9,13 17:18
  18:10,11,17,18
corrections  26:12
counsel  2:14 24:14
  24:18
county  24:2
couple  20:19
court  1:1
coverage  19:16,20
cracks  16:8,10
  17:20
crumbling  20:18
crying  10:23
cs2687237  1:25
  25:2
csr  1:22
currently  4:25 9:4
cv  1:3

            d
d  1:2,13,20 23:1
  26:5
dam  21:3
danforth  1:10,13
  3:22 22:12 26:5
date  25:3 26:8
dated  8:4,15,19
  24:21
day  24:21 25:22
days  26:19
dear  26:10
deemed  26:20
defendant  1:14
  2:2
dell  5:12
department  22:1,5
  26:23

deponent  3:6
  24:11
deposition  1:7 2:1
  2:16,24 3:3,15,18
  6:3 22:14 24:5
  25:3 26:8,11
description  23:7
dictionary  18:20
  18:23
died  10:10
direct  3:9 8:10
  23:5
directly  10:6
disclosure  6:13
  7:9
dismissed  22:13
district  1:1,1
document  6:25
  7:12
documentation
  22:1
doing  10:1 20:20
don  7:22,25
dryer  16:6
due  15:11,15,19
duly  2:4

            e
e  23:1
east  5:24 9:8
educational  9:10
eight  19:8
ellington  1:11
emc  5:12
employed  10:8
encl  26:24
enclosed  26:11
endurance  4:7
engineering  13:22
engineers  13:4
entitled  2:3

errata  25:1 26:13
  26:16
esq  26:5,25
esquire  1:13,18
essentially  16:3
estimates  20:6
et  25:3 26:6
event  24:19
examination  3:9
  23:5
examined  24:13
excuse  10:10
exhibit  6:2,11,21
  7:7,15,22 8:3,18
  23:7
exhibits  23:11
expires  24:25
  25:25
expound  17:4
extensive  19:20
exterior  12:15
eye  16:18

            f
fair  4:17 16:4,5
family  17:25
farmstead  5:23
fax  26:2
federal  2:3 24:6
felony  11:8
file  21:17
filed  11:12 21:9,15
final  6:17
financing  7:1
find  26:11
fine  5:7 6:20 7:20
finish  4:2
finished  12:11
fire  1:5 25:3 26:6
first  3:6 19:19
  24:11

EXHIBIT 9

**[five - looking]**                                                                 Page 3

five   10:21
flip   7:16 8:23 9:1
follows   3:7
footing   16:24 17:8
footings   16:22
   17:18
foreclosure   11:15
form   2:22
formalities   2:15
former   6:15
forward   26:16
found   19:22
foundation   5:15
   13:25 14:3,24
   15:2,7,11,15,20
   16:9 17:21 18:7
   18:19 19:21,22
   20:22,25
four   10:9
free   26:2
full   4:19
further   2:21 3:1
   18:15 22:10 24:11
   24:17

**g**

g   1:3,7 2:1 3:6
   4:21 23:3 24:5
   25:4,20 26:8
gap   10:6,7
general   13:16
george   14:18
given   20:21
gleaned   11:24
go   3:24 4:10 10:12
goes   16:20 17:8
going   4:7,15
gonder   4:20
good   3:11
gotcha   5:13 11:4
   12:4 16:1,21
   19:24 21:24 22:8

gotten   17:21
ground   3:24
growing   19:7

**h**

happy   4:5
hartford   1:16 2:7
   5:24 9:8 24:8
health   21:5
held   2:6 10:14
hereinbefore   2:2
   24:16
hereto   24:18
highest   9:10
hl   1:17
home   5:21 6:4,8
   6:15,22 7:1,10 8:3
   9:8 11:3,18 12:5,9
   12:23,24 13:17
   14:13 15:11,15,19
   18:10
house   5:19 9:5,8
   12:2 13:14 14:16
   17:8,17 21:6
howd   1:15 2:6
   24:7
husband   3:25 5:18
   6:23 13:3
husband's   3:14
   6:3 9:2 16:3

**i**

ice   21:3,6
identified   13:3
included   26:13
including   2:16
indicating   26:13
individuals   12:7
   13:2
infiltration   14:6
injury   21:7

inspection   8:3
   12:20,24 14:13
inspector   20:3
inspectors   12:23
instant   11:6
insurance   1:5 3:13
   5:1,3 18:13 21:4,5
   25:3 26:6
insured   4:25 5:10
interest   4:1
interested   24:19
interrogatories
   8:20
involved   12:8
issue   19:23
issues   19:21

**j**

j   1:21 2:4 24:3,23
jam   1:3
jersey   26:2
jewelry   10:25 11:1
job   1:25 10:17,19
   10:22,24
jurat   26:19

**k**

keep   13:13
kidding   13:13
kieran   1:18 3:12
   26:25
kind   12:14 19:20
   21:10
kleary   1:17
know   4:5 5:3,9
   7:13 12:5,7 13:24
   14:2 16:17,22,23
   16:24 17:5,15,15
   17:17,20 20:2,9,11
   20:12,13,24
knowledge   11:22
   11:23 13:1

**l**

l   2:11
law   2:6 24:7
law.com   1:17
lawsuit   11:5
lawsuits   21:7,15
leard   1:21 2:4 24:3
   24:23
learn   19:3
learned   19:19
leary   1:18 3:10,12
   3:20,23 10:12,15
   21:14 22:9 23:5
   26:25
legal   25:1 26:1
lester   1:2,3,7,20
   2:1 3:6,11 4:21
   8:5 21:12 23:3
   24:5 25:3,4,20
   26:6,8
letter   26:20
level   9:10
liberty   1:5 3:13
   5:1,4,10 14:8
   18:13 19:14 25:3
   26:6
liking   9:24
line   25:5 26:13
listed   6:22 13:8
little   10:4
lived   5:18,21
livingston   26:2
llc   1:10
local   19:25
long   5:9,11 9:22
   10:3,8,20
look   7:4 14:16
   18:22
looked   18:19
looking   17:22

EXHIBIT 9

[lot - purposes]                                                                Page 4

**lot**  10:17,19,22,24
  19:10
**loud**  10:23
**lower**  17:24
**ludorf**  1:15 2:7
  24:8

**m**

**ma'am**  4:19
**main**  1:10
**manager**  9:21
**marked**  6:2,10,21
  7:7,14,21 8:2,18
  23:11
**married**  4:22
**mary**  4:20
**matter**  11:6
**meet**  7:25 14:15
**meetings**  20:17
**merit**  1:22
**met**  14:11,12
**michigan**  9:14,16
  17:3,23
**middle**  5:6
**middlesex**  5:5,14
**middletown**  5:5
**minute**  10:10
**misdemeanor**
  11:10
**mishawaka**  17:25
  18:2,3,6
**mom**  11:3
**monica**  1:3,7 2:1
  3:6 4:20,21 8:5
  23:3 24:5 25:4,20
  26:8
**mt**  26:1
**mutual**  1:5 14:9
  19:14 25:3 26:6

**n**

**n**  2:11 23:1
**name**  4:19 25:3,4
  26:6
**names**  12:7
**neal**  7:17 8:4
  12:20 14:12 21:1
**need**  4:4
**neighbors**  20:14
**never**  12:11
**new**  26:2
**news**  14:20 19:16
  19:20,25
**noah's**  11:1,2
**notarized**  26:15
**notary**  2:5 3:3
  24:3,24 25:21,24
**note**  26:12
**notice**  2:17 16:8
**noticed**  16:10,15
**november**  8:4,8,15
**number**  26:7,13

**o**

**o**  2:11
**oakland**  9:15
**oath**  20:21
**objections**  2:22
**obtaining**  7:1
**occupy**  18:10
**ocean**  10:19
**officer**  2:17
**offices**  2:6 24:7
**oh**  7:24 9:3 10:23
  16:19
**okay**  4:19 5:17 7:6
  7:14,20 8:12 9:20
  9:24 10:3,8,22
  11:4 13:2 15:1
  16:8 17:4,11,14,20
  17:23,25 18:16

  19:9,13 20:20
  21:10,15,17,25
  22:9,12
**old**  12:3 17:7
**originally**  9:16
**owned**  5:23 9:7
**ownership**  11:15

**p**

**p**  2:11
**p.m.**  2:8 22:14
  24:9
**p.o.**  1:11
**page**  6:17 7:16
  8:11,23 9:2 18:14
  23:7 25:5 26:13
**painted**  18:7
**paperwork**  11:25
  21:17
**part**  17:23
**parties**  2:14 24:18
**party**  11:5
**paying**  19:23
**penalty**  26:16
**pending**  4:9
**peninsula**  17:24
**people**  20:11
**perjury**  26:16
**personal**  21:7
**personally**  19:14
  20:13
**photographed**
  20:24
**photographs**
  14:23
**picked**  17:13
**piece**  9:25
**place**  2:16
**plaintiffs**  1:9
**plan**  21:17,20
**pleasant**  26:1

**please**  4:2,5,13
  8:11 10:18 26:11
  26:11
**point**  4:4,12
**policy**  18:12,17
**posed**  4:16
**poured**  14:2
**prepare**  12:24
**prepared**  7:9 8:4,5
**present**  1:20 6:1
**previously**  5:23
**prior**  5:4 12:20
  14:24 16:9 18:16
  19:17
**probably**  7:2 18:5
  19:7
**problems**  14:5
  15:11
**procedure**  2:4
  24:7
**proceedings**  11:16
**production**  8:20
  26:23
**proof**  3:2
**properties**  9:4,7
**property**  6:12 7:8
  11:14 12:18,25
  13:4,6,8,12 16:22
  20:2 21:18
**proposal**  7:22
**protection**  22:2,6
**provided**  13:24
**public**  2:5 3:3 24:3
  24:24 25:24
**purchase**  6:7
  12:21
**purchased**  5:19
  11:18 12:18
**purchasing**  13:12
**purposes**  21:18

**[pursuant - testified]**                                                                      Page 5

**pursuant** 2:3 24:6
**put** 13:14
**putting** 17:9

**q**

**qualifications** 3:2
**qualified** 2:5
**question** 4:9,14,16
**questions** 4:2

**r**

**r** 11:2
**rat** 16:25 17:1,3,4
  17:5,12 19:3,5
**reading** 2:23
  26:20
**really** 17:16
**reason** 25:5 26:14
**reassessed** 21:18
**recall** 7:12,13,23
  8:7,9 16:14
**receipt** 26:19
**received** 18:16
  20:5
**recess** 10:14
**record** 4:1 10:12
  10:14
**reference** 26:7
**regarding** 5:15
  14:9,21 20:21
**registered** 1:22
**related** 24:17
**relocate** 15:10,15
  15:19
**remember** 7:5,19
  12:1
**rented** 13:6
**repairs** 15:1 20:6
**rephrase** 4:13
**replaced** 15:7
**report** 6:13,22 7:9
  7:17,18 8:3 12:24

19:13
**reported** 24:15
**reporter** 1:22
**reporting** 19:17
**represent** 3:12
**requests** 8:20
**required** 25:21
**reserved** 2:22
**residential** 6:12
  7:8 13:19
**respective** 2:14
**response** 17:2 20:1
**responses** 8:19
**retaining** 18:22
**returned** 26:19
**review** 18:12
  26:12
**right** 3:21 4:25
  8:15,17 11:19
  12:18 15:12,24
  16:12,14,20 18:4
  19:9,25 20:5,13,16
  21:22
**ring** 18:2
**rmr** 2:4
**road** 5:24 19:12
**room** 13:14
**rules** 2:3 3:24 24:6

**s**

**s** 2:11,11 25:5
**sale** 13:9
**sat** 3:14
**saw** 6:2,7
**saying** 18:4
**sears** 10:2,3,5,16
**second** 10:13
**security** 4:21
**see** 6:25 10:24
  12:17 18:14 19:16
**seeing** 7:12,19,23
  8:7

**seen** 7:2,18
**seller** 7:9
**september** 1:5 2:9
  24:10,22 26:4
**set** 22:12
**settling** 16:11
**seven** 19:8
**sheet** 25:1 26:13
  26:15,16
**shored** 15:4
**short** 5:11
**shortly** 6:7
**show** 6:10 8:17
**showing** 7:6,14,21
  8:2
**shown** 26:17
**side** 9:1 16:18
**siding** 12:14,16
**signature** 6:17
  8:13,14,24 9:2
  26:14
**signed** 7:3
**signing** 2:23 26:15
  26:20
**similar** 20:9
**sincerely** 26:22
**sir** 26:10
**site** 19:1
**six** 12:3
**skechers** 9:19,22
  10:1,6
**social** 4:21
**solutions** 25:1
  26:1
**somers** 24:21
**sorry** 10:11
**sort** 13:19
**space** 16:4
**spell** 10:18
**spoken** 14:8

**started** 19:23
**state** 2:5 10:19
  24:1,4
**states** 1:1
**stay** 11:3
**stenographically**
  24:14
**stips** 3:20
**stipulated** 2:13,21
  3:1
**storage** 16:4
**store** 10:25 11:1
**street** 1:10
**strike** 14:11
**subject** 11:15
**submitted** 22:5
**subscribed** 25:21
**subsequently**
  24:15
**sufficiency** 2:16
**suite** 26:1
**support** 17:9
**switched** 9:15
**sworn** 3:7 24:12
  25:21

**t**

**t** 2:11,11
**take** 4:4
**taken** 2:1,18 3:4
  3:18 14:24 24:6
**talked** 14:18,20
  15:25
**tanddlaw.com**
  1:12
**tax** 21:18
**tell** 4:8 24:12
**term** 17:7 18:17
**terminology** 17:16
**test** 4:7
**testified** 3:7

[testimony - young]                                                        Page 6

testimony  16:3
  20:21 24:14
thank  22:11
thing  19:25
things  16:17
think  5:11 11:25
  12:2 21:9
third  7:16 8:11,23
thirty  26:19
thought  16:11,13
thursday  2:8 24:9
time  2:16,23 5:19
  19:19
today  20:20
told  15:14,18
tolisano  1:10
toll  26:2
tolland  24:2
tomorrow  21:20
top  18:14
toys  11:2
transcribed  24:15
transcript  26:11
  26:12
transition  10:5
trial  2:23
trouble  13:15
truth  24:12,12,13
trying  12:1
two  9:12,23 10:4

**u**

u  2:11
uncles  17:7 19:10
underneath  17:8
understand  4:12
  16:2
understood  4:15
united  1:1
university  9:14
use  16:3 19:10

usual  3:20

**v**

v  25:3 26:6
vaguely  7:5
veritext  25:1 26:1
  26:7
visited  19:1
vs  1:4

**w**

w  1:18 26:1,25
waived  2:19,24
  3:4 26:20
walk  16:18
wall  4:8 16:25
  17:1,3,5,5,12
  18:22
walls  12:15 14:24
  15:2,4 18:8 19:3,5
want  5:5
washer  16:6
water  14:5
way  24:19
weeks  9:23 10:9
wendy  1:21 2:4
  24:3,23
went  3:25
wethersfield  1:16
  2:7 24:8
when's  19:19
witness  22:13 23:3
  24:5 25:4 26:8,11
witness'  26:14
work  9:18,19
  21:23
worked  5:12 10:2
  19:11
worse  17:21

**x**

x  23:1

**y**

yeah  5:8
year  5:11
years  4:24 9:12
  10:4,21 12:3
yep  6:19
young  17:13

Connecticut Procedure in Civil Matters

Chapter 13, Discovery and Depositions

Section 13-30

(D) If requested by the deponent or any party, when the testimony is fully transcribed the deposition shall be submitted to the deponent for examination and shall be read to or by the deponent. Any changes in form or substance which the deponent desires to make shall be entered upon the deposition by the officer with a statement of the reasons given by the deponent for making them. The deposition shall then be signed by the deponent certifying that the deposition is a true record of the deponent's testimony, unless the parties by stipulation waive the signing or the witness is ill or cannot be found or refuses to sign. If the deposition is not signed by the deponent within thirty days after its submission to the deponent, the officer shall sign it and state on the record the fact of the waiver or of the illness or absence of the deponent or the fact of the refusal or failure to sign, together with the reason, if any, given therefore; and the deposition may then be used as fully as though signed unless, on a motion

EXHIBIT 9

to suppress under Section 13-31 (c) (4), the judicial authority holds that the reasons given for the refusal or failure to sign require rejection of the deposition in whole or in part.


DISCLAIMER: THE FOREGOING CIVIL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF SEPTEMBER 1, 2016. PLEASE REFER TO THE APPLICABLE STATE RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

EXHIBIT 9

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted
fashion to authenticated parties who are permitted to
access the material. Our data is hosted in a Tier 4
SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and
State regulations with respect to the provision of
court reporting services, and maintains its neutrality
and independence regardless of relationship or the
financial outcome of any litigation. Veritext requires
adherence to the foregoing professional and ethical
standards from all of its subcontractors in their
independent contractor agreements.

Inquiries about Veritext Legal Solutions'
confidentiality and security policies and practices
should be directed to Veritext's Client Services
Associates indicated on the cover of this document or
at www.veritext.com.

EXHIBIT 9

EXHIBIT 9