DEFENDANT'S
EXHIBIT NO. 3
FOR IDENTIFICATION
DATE: 9-7-17 WJ   RPTR

O'Malley, O'Rourke & Bezz Appraisal Associates, Inc.

File No. 5-9016ST   Page #1

**Summary Appraisal Report**
Property Description
**UNIFORM RESIDENTIAL APPRAISAL REPORT**   File No. 5-9016ST

| | |
|---|---|
| Property Address **24 LAUREL DRIVE** | City **WILLINGTON**   State **CT**   Zip Code **06279-2247** |
| Legal Description **VOLUME 158, PAGE 954 (WILLINGTON LAND RECORDS, ATTACHED)** | County **TOLLAND** |
| Assessor's Parcel No. **MAP 53 / LOT 020-38** | Tax Year **2004**   R.E. Taxes $ **5,371.40**   Special Assessments $ **0.00** |
| Borrower **CHRISTOPHER/MONICA LESTER**   Current Owner **LORETTA BUDKOFSHY** | Occupant ☒ Owner □ Tenant □ Vacant |
| Property rights appraised ☒ Fee Simple □ Leasehold   Project Type □ PUD □ Condominium (HUD/VA only) | HOA $ **NONE** /Mo. |
| Neighborhood or Project Name **LAUREL ESTATES**   Map Reference **25540** | Census Tract **8401.08** |
| Sale Price $ **368,000**   Date of Sale **PENDING**   Description and $ amount of loan charges/concessions to be paid by seller **N/A** | |
| Lender/Client **SAMBORN CORPORATION**   Address **66 LASALLE ROAD SUITE 310, WEST HARTFORD, CT** | |
| Appraiser **THOMAS F. CLEARY**   Address **180 OAK STREET, GLASTONBURY, CT 06033** | |

| Location □ Urban ☒ Suburban □ Rural | Predominant occupancy | Single family housing | Present land use % | Land use change |
|---|---|---|---|---|
| Built up □ Over 75% ☒ 25-75% □ Under 25% | | PRICE $(000) / AGE (yrs) | One family **65** | □ Not likely □ Likely |
| Growth rate □ Rapid ☒ Stable □ Slow | ☒ Owner | **180** Low **NEW** | 2-4 family | ☒ In process |
| Property values □ Increasing ☒ Stable □ Declining | □ Tenant | **450+** High **75+** | Multi-family | To: **RESIDENTIAL** |
| Demand/supply □ Shortage ☒ In balance □ Over supply | ☒ Vacant (0-5%) | **Predominant** | Commercial | **FROM VACANT LAND** |
| Marketing time □ Under 3 mos. ☒ 3-6 mos. □ Over 6 mos. | □ Vac.(over 5%) | **300** **30** | VACANT **35** | |

Note: Race and the racial composition of the neighborhood are not appraisal factors.

Neighborhood boundaries and characteristics: **THE NEIGHBORHOOD IS GENERALLY BOUNDED TO THE NORTH BY THE STAFFORD TOWN LINE, TO THE SOUTH AND EAST BY INTERSTATE 84, AND TO THE WEST BY THE ELLINGTON TOWN LINE.**

Factors that affect the marketability of the properties in the neighborhood (proximity to employment and amenities, employment stability, appeal to market, etc.): **THE SUBJECT PROPERTY IS LOCATED IN NORTHWESTERN WILLINGTON. THE MAJOR EMPLOYMENT CENTERS OF GREATER HARTFORD COUNTY ARE WITHIN A 30-MINUTE COMMUTE VIA I-84 WITH RAMP ACCESS APPROXIMATELY 2 MILES SOUTH. RESIDENTIAL USES IN THE GENERAL NEIGHBORHOOD ARE OF MIXED STYLE AND VINTAGE, WITH NEW CONSTRUCTION REPRESENTING THE UPPER RANGE OF VALUE. THE TOWN CENTER OFFERS A LIGHT ARRAY OF SERVICES AND AMENITIES. NO UNFAVORABLE FACTORS WERE EVIDENT AT TIME OF INSPECTION.**

Market conditions in the subject neighborhood (including support for the above conclusions related to the trend of property values, demand/supply, and marketing time — such as data on competitive properties for sale in the neighborhood, description of the prevalence of sales and financing concessions, etc.): **ACCORDING TO THE COMMERCIAL RECORD SALES REVIEW, THERE WERE 43 RESIDENTIAL SALES WITHIN WILLINGTON THROUGH AUGUST OF 2005, WITH A MEDIAN SALES PRICE OF $250,000, UP 25.06% FROM THE SAME PERIOD ONE YEAR AGO. CONVENTIONAL FINANCING FOR FIXED RATE, 30-YEAR MORTGAGES CURRENTLY AVERAGE 6.18% IN CONNECTICUT. SALES AND FINANCING CONCESSIONS ARE UNCOMMON WITHIN THIS MARKET.**

Project Information for PUDs (if applicable) - - Is the developer/builder in control of the Home Owners' Association (HOA)? □ Yes □ No
Approximate total number of units in the subject project **N/A**   Approximate total number of units for sale in the subject project **N/A**
Describe common elements and recreational facilities: **N/A**

| | | | | |
|---|---|---|---|---|
| Dimensions **SEE ATTACHED LEGAL DESCRIPTION & MAP** | | | Topography | **PRIMARILY LEVEL** |
| Site area **3.62 ACRES** | Corner Lot □ Yes ☒ No | | Size | **TYPICAL FOR AREA** |
| Specific zoning classification and description **"R-80" RESIDENTIAL 80,000 SF MINIMUM** | | | Shape | **MOSTLY RECTANGULAR** |
| Zoning compliance ☒ Legal □ Legal nonconforming (Grandfathered use) □ Illegal □ No zoning | | | Drainage | **APPEARED ADEQUATE** |
| Highest & best use as improved ☒ Present use □ Other use (explain) | | | View | **HOMES/WOODS** |

| Utilities | Public | Other | Off-site Improvements | Type | Public | Private | | |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Street | **ASPHALT** | ☒ | □ | Landscaping | **WOODED/TYP. OF NEIGH.** |
| Gas | | **NONE** | Curb/gutter | **ASPHALT** | ☒ | □ | Driveway Surface | **PROCESSED GRAVEL** |
| Water | □ | **PRIVATE \*** | Sidewalk | **NONE** | □ | □ | Apparent easements | **NONE ON DEED** |
| Sanitary sewer | □ | **PRIVATE \*** | Street lights | **NONE** | □ | □ | FEMA Special Flood Hazard Area | □ Yes ☒ No |
| Storm sewer | ☒ | | Alley | **NONE** | □ | □ | FEMA Zone **C**   Map Date **6/15/1982** |

FEMA Map No. **0901590002A**

Comments (apparent adverse easements, encroachments, special assessments, slide areas, illegal or legal nonconforming zoning use, etc.): **\*PRIVATE WATER AND SANITATION SYSTEMS ARE COMMON TO THE REGION AND ARE NOT CONSIDERED ADVERSE. WOODED LOT WITH MATURE LANDSCAPING. NO ADVERSE EASEMENTS NOTED ON DEED.**

| GENERAL DESCRIPTION | EXTERIOR DESCRIPTION | FOUNDATION | BASEMENT | INSULATION |
|---|---|---|---|---|
| No. of Units **1 FAMILY** | Foundation **CONCRETE** | Slab **32 X 8** | Area Sq. Ft. **1,008** | Roof **NONE** □ |
| No. of Stories **2 STORY** | Exterior Walls **VINYL** | Crawl Space **NONE** | % Finished **0%** | Ceiling **TYP** ☒ |
| Type (Det./Att.) **DETACHED** | Roof Surface **ASPH SHGL** | Basement **36 X 28** | Ceiling **WD JOIST** | Walls **TYP** ☒ |
| Design (Style) **COLONIAL** | Gutters & Dwnspts. **ALUMINUM** | Sump Pump **NONE** | Walls **CONCRETE** | Floor **NONE** ☒ |
| Existing/Proposed **EXISTING** | Window Type **D.H./WOOD** | Dampness **NONE NOTED** | Floor **CONCRETE** | None **N/A** □ |
| Age (Yrs.) **1998** | Storm/Screens **THERMO/YES** | Settlement **NONE NOTED** | Outside Entry **HATCHWAY** | Unknown **N/A** □ |
| Effective Age (Yrs.) **4-7 YEARS** | Manufactured House **NO** | Infestation **NONE NOTED** | EGRESS TO REAR | |

| ROOMS | Foyer | Living | Dining | Kitchen | Den | Family Rm. | Rec. Rm. | Bedrooms | # Baths | Laundry | Other | Area Sq. Ft. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Basement | | | | | | | | | | | | 1,008 |
| Level 1 | X | 1 | 1 | 1 | | 1 | | | .5 | X | MUD RM | 1,304 |
| Level 2 | | | | | | | | 3 | 2.0 | | | 1,174 |

Finished area above grade contains: **8** Rooms; **3** Bedroom(s); **2.5** Bath(s); **2,478** Square Feet of Gross Living Area

| INTERIOR | Materials/Condition | HEATING | | KITCHEN EQUIP. | | ATTIC | | AMENITIES | | CAR STORAGE: | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Floors | **CPT/TILE/HDW/\*** | Type **FHW** | Refrigerator ☒ | | None □ | | Fireplace(s) # **1-FP** ☒ | | None □ | |
| Walls | **DRYWALL/AV-GD** | Fuel **OIL** | Range/Oven ☒ | | Stairs □ | | Patio **NONE** | | Garage # of cars | |
| Trim/Finish | **WOOD/AVG-GOOD** | Condition **AVG** | Disposal □ | | Drop Stair ☒ | | Deck **24 X 12** ☒ | | Attached **3-CAR** | |
| Bath Floor | **TILE/AVG-GOOD** | COOLING | Dishwasher ☒ | | Scuttle □ | | Porch **OPEN** ☒ | | Detached **NONE** | |
| Bath Wainscot | **FIBERGLASS/AVG** | Central **NONE** | Fan/Hood ☒ | | Floor □ | | Fence **NONE** □ | | Built-in **NONE** | |
| Doors | **6 PANEL/AVG** | Other **NONE** | Microwave □ | | Heated □ | | Pool **NONE** □ | | Carport **NONE** | |
| | | Condition **N/A** | Washer/Dryer □ | | Finished □ | | | | Driveway **3+ CARS** | |

Additional features (special energy efficient items, etc.): **COLONIAL STYLE HOME WITH 3 CAR ATTACHED GARAGE LOCATED ON LEVEL LOT. AMENITIES INCLUDE OAK CABINETS, HARDWOOD AND TILE FLOORS, MASONRY FIREPLACE, DECK OFF REAR.**

Condition of the improvements, depreciation (physical, functional, and external), repairs needed, quality of construction, remodeling/additions, etc.: **THERE WAS NO FUNCTIONAL OR EXTERNAL OBSOLESCENCE EVIDENT UPON INSPECTION. THE HOME WAS CONSTRUCTED IN 1998. NO REPAIRS REQUIRED TO JUSTIFY THE INDICATED VALUE.**

Adverse environmental conditions (such as, but not limited to, hazardous wastes, toxic substances, etc.) present in the improvements, on the site, or in the immediate vicinity of the subject property: **NO ADVERSE ENVIRONMENTAL CONDITIONS EVIDENT AT TIME OF INSPECTION. THE SUBJECT UTILIZES A STANDARD (275 GALLON) OIL TANK WHICH IS LOCATED IN THE BASEMENT.**

Freddie Mac Form 70  6/93   PAGE 1 OF 2   Fannie Mae Form 1004 6/93

Form UA2 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

EXHIBIT 16

File No. 5-9016ST  Page #2

## UNIFORM RESIDENTIAL APPRAISAL REPORT   File No. 5-9016ST

### Valuation Section

**COST APPROACH**

| ESTIMATED SITE VALUE | = $ | 90,000 |
|---|---|---|
| ESTIMATED REPRODUCTION COST-NEW-OF IMPROVEMENTS: | | |
| Dwelling 2,478 Sq. Ft. @ $ 90.00 = $ | | 223,020 |
| 1,008 Sq. Ft. @ $ 20.00 = | | 20,160 |
| APPLS/FP/DECK/O.PORCH/EXPAN. = | | 25,000 |
| Garage/Carport 748 Sq. Ft. @ $ 23.00 = | | 17,204 |
| Total Estimated Cost New = $ | | 285,384 |
| Less Physical / Functional / External | | |
| Depreciation 8,447 | = $ | 8,447 |
| Depreciated Value of Improvements | = $ | 276,937 |
| "As-is" Value of Site Improvements | = $ | 12,000 |
| INDICATED VALUE BY COST APPROACH | = $ | 378,937 |

Comments on Cost Approach (such as, source of cost estimate, site value, square foot calculation and for HUD, VA and FmHA, the estimated remaining economic life of the property): **THE SUBJECT'S REMAINING PHYSICAL LIFE IS ESTIMATED AT 58-61 YEARS. THE MARSHALL AND SWIFT COST SERVICE WAS UTILIZED AS A GUIDE TO ESTIMATE THE SUBJECT'S REPLACEMENT COST NEW AND PHYSICAL DEPRECIATION. NO FUNCTIONAL OR EXTERNAL OBSOLESCENCE NOTED.**

### Sales Comparison Analysis

| ITEM | SUBJECT | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| | 24 LAUREL DRIVE | 28 LAUREL DRIVE | | 23 LINDSAY LANE | | 60 HALL HILL ROAD | |
| Address | WILLINGTON, CT | WILLINGTON, CT | | WILLINGTON, CT | | WILLINGTON, CT | |
| Proximity to Subject | | ADJOINING LOT | | 5.11 miles | | 5.91 miles | |
| Sales Price | $ 368,000 | $ 415,000 | | $ 367,000 | | $ 350,000 | |
| Price/Gross Living Area | $ 148.51 ⌖ | $ 156.84 ⌖ | | $ 146.80 ⌖ | | $ 176.59 ⌖ | |
| Data and/or | T. RECORDS | TOWN RECORDS/MLS | | TOWN RECORDS/MLS | | TOWN RECORDS/MLS | |
| Verification Source | INTERIOR INSP | EXTERIOR INSPECTION | | EXTERIOR INSPECTION | | EXTERIOR INSPECTION | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. |
| Sales or Financing Concessions | | CONVENTIONAL NONE KNOWN | | CONVENTIONAL NONE KNOWN | | CONVENTIONAL NONE KNOWN | |
| Date of Sale/Time | | 12/17/2004 | | 05/02/2005 | | 06/01/2005 | |
| Location | GOOD | GOOD | | GOOD | | GOOD | |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | 3.62 ACRES | 1.84 ACRES | +4,000 | 6.35 ACRES | −6,000 | 8.22 ACRES | −10,000 |
| View | HOMES/WOODS | HOMES/WOODS | | HOMES/WOODS | | HOMES/WOODS | |
| Design and Appeal | COLONIAL/AVG | COLONIAL/AVG | | COLONIAL/AVG | | COLONIAL/AVG | |
| Quality of Construction | AVERAGE | GOOD | −10,000 | AVERAGE | | AVERAGE | |
| Age | 1998 | 1993 | | 1989 | 8,000 | 1987 | 8,000 |
| Condition | AVG./GOOD | AVG./GOOD | | AVG./GOOD | | AVG-GOOD | |
| Above Grade | Total Bdrms Baths | Total Bdrms Baths | | Total Bdrms Baths | | Total Bdrms Baths | |
| Room Count | 8 3 2.5 | 8 3 2.5 | | 8 4 2.5 | | 7 3 2.5 | |
| Gross Living Area | 2,478 Sq. Ft. | 2,646 Sq. Ft. | −5,880 | 2,500 Sq. Ft. | NO ADJ. | 1,982 Sq. Ft. | 17,360 |
| Basement & Finished | 1,008 | FULL BSMT | | FULL BSMT | | FULL BSMT. | |
| Rooms Below Grade | UNFINISHED | FULL FIN. | −15,000 | UNFINISHED | | UNFINISHED | |
| Functional Utility | ADEQUATE | ADEQUATE | | ADEQUATE | | ADEQUATE | |
| Heating/Cooling | FHW/NO CAC | FHW/CAC | −5,000 | FHW/NO CAC | | FHW/CAC | −5,000 |
| Energy Efficient Items | TYP. FOR AGE | TYP. FOR AGE | | TYP. FOR AGE | | TYP. FOR AGE | |
| Garage/Carport | 3-CAR ATT. GR | 2-CAR ATTGR. | 3,000 | 2-CAR ATT. GR | 3,000 | 2-CAR ATT. GR | +3,000 |
| Porch, Patio, Deck, | DECK/PORCH | LG. DECK/PRCH | −3,500 | DECK/PORCH | | LG. DECKS/PCH | −5,000 |
| Fireplace(s), etc. | 1-FIREPLACE | 1 FIREPLACE | | 1 FIREPLACE | | 1 FIREPLACE | |
| Fence, Pool, etc. | NONE | IN-GRND POOL | −6,000 | IN-GRND POOL | −6,000 | NONE | |
| AMENITIES | EXPANSION | SHED | +5,000 | SHED | +5,000 | NONE | +5,000 |
| Net Adj. (total) | | ☐ + ☒ − $ | 33,380 | ☒ + ☐ − $ | 4,000 | ☒ + ☐ − $ | 13,360 |
| Adjusted Sales Price of Comparable | | Net 8.0 % Gross 13.6 % $ | 381,620 | Net 1.1 % Gross 7.9 % $ | 371,000 | Net 3.8 % Gross 15.2 % $ | 363,360 |

Comments on Sales Comparison (including the subject property's compatibility to the neighborhood, etc.): **DUE TO THE LACK OF MORE RECENT COMPARABLE SALES IT WAS NECESSARY TO EXCEED STANDARD GUIDELINES REGARDING DATE OF TRANSFER, DISTANCE, AND SIZE IN ORDER TO PROVIDE RELEVANT SALES COMPARISON DATA. QUALITY ADJUSTMENTS CONSIDER SUPERIOR FINISH WORK SUCH AS GRANITE COUNTERS, UPGRADED APPLIANCES, MARBLE FLOORING. DIFFERENCES IN GROSS LIVING AREA WERE ADJUSTED AT $35.00/SF AND ROUNDED. SITE ADJUSTMENTS BASED ON LOT SIZE, SHAPE, AND TOPOGRAPHY. EXPANSION ADJUSTMENT REFLECTS AN AREA OVER GARAGE SUITABLE FOR FUTURE LIVING AREA.**

| ITEM | SUBJECT | COMPARABLE NO. 1 | COMPARABLE NO. 2 | COMPARABLE NO. 3 |
|---|---|---|---|---|
| Date, Price and Data Source, for prior sales within year of appraisal | 07/15/2003 $315,000 (T. RECORDS) | NO SALE DURING THE PRIOR YEAR. (TOWN RECORDS) | NO SALE DURING THE PRIOR YEAR. (TOWN RECORDS) | 09/24/2003 $309,000 (TOWN RECORDS) |

Analysis of any current agreement of sale, option, or listing of subject property and analysis of any prior sales of subject and comparables within one year of the date of appraisal: **THE SUBJECT HAS BEEN LISTED WITH THE LOCAL MLS SINCE 07/17/05 ORIGINALLY FOR $439,900 AND MOST RECENTLY FOR $379,900. THE PENDING SALES AGREEMENT WAS AVAILABLE.**

| | | |
|---|---|---|
| INDICATED VALUE BY SALES COMPARISON APPROACH | $ | 368,000 |
| INDICATED VALUE BY INCOME APPROACH (if Applicable) Estimated Market Rent $ --- /Mo. x Gross Rent Multiplier --- = $ | | |

This appraisal is made ☒ "as is" ☐ subject to the repairs, alterations, inspections or conditions listed below ☐ subject to completion per plans & specifications.

Conditions of Appraisal: **THIS REPORT IS FOR THE SOLE USE OF THE LENDER/CLIENT FOR MORTGAGE PURPOSES ONLY. PERSONAL PROPERTY IS NOT INCLUDED IN THE VALUE ESTIMATE.**

Final Reconciliation: **THE INCOME APPROACH WAS NOT DEVELOPED DUE TO LACK OF VERIFIABLE RENTAL DATA. THE SALES COMPARISON ANALYSIS IS CONSIDERED THE MOST RELIABLE INDICATOR OF VALUE. THE COST APPROACH IS NOT RELIABLE DUE TO THE SUBJECT'S AGE AND DIFFICULTY OF DETERMINING DEPRECIATION.**

The purpose of this appraisal is to estimate the market value of the real property that is the subject of this report, based on the above conditions and the certification, contingent and limiting conditions, and market value definition that are stated in the attached Freddie Mac Form 439/FNMA form 1004B (Revised 6/93 ).

I (WE) ESTIMATE THE MARKET VALUE, AS DEFINED, OF THE REAL PROPERTY THAT IS THE SUBJECT OF THIS REPORT, AS OF **OCTOBER 27, 2005** (WHICH IS THE DATE OF INSPECTION AND THE EFFECTIVE DATE OF THIS REPORT) TO BE $ **368,000**

| APPRAISER: | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature ☐ Did ☒ Did Not Inspect Property |
| Name THOMAS F. CLEARY | Name SHAUN C. O'ROURKE |
| Date Report Signed October 27, 2005 | Date Report Signed October 27, 2005 |
| State Certification # RCR.731  State CT | State Certification # RCR.393  State CT |
| Or State License #  State | Or State License #  State |

Freddie Mac Form 70 6/93          PAGE 2 OF 2          Fannie Mae Form 1004 6-93

Form UA2 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

EXHIBIT 16

File No. 5-9016ST Page #4



Form SCA — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

EXHIBIT 16

**Subject Photos**

| | | | |
|---|---|---|---|
| Borrower/Client **CHRISTOPHER/MONICA LESTER** | | | |
| Property Address **24 LAUREL DRIVE** | | | |
| City **WILLINGTON** | County **TOLLAND** | State **CT** | Zip Code **06279-2247** |
| Lender **SANBORN CORPORATION** | | | |

**Subject Front**
**24 LAUREL DRIVE**



**Subject Rear**



**Subject Street**



Form PIC3x5.TR — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

EXHIBIT 16

**Subject Photos**

| Borrower/Client | **CHRISTOPHER/MONICA LESTER** | | | |
|---|---|---|---|---|
| Property Address | **24 LAUREL DRIVE** | | | |
| City **WILLINGTON** | County **TOLLAND** | State **CT** | Zip Code **06279-2247** |
| Lender | **SANBORN CORPORATION** | | | |



**Subject Front**
**24 LAUREL DRIVE**



**Subject Rear**



**Subject Street**

Form PIC3x5.TR — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

EXHIBIT 16

**Comparable Photo Page**

| Borrower/Client | CHRISTOPHER/MONICA LESTER | | | |
|---|---|---|---|---|
| Property Address | 24 LAUREL DRIVE | | | |
| City WILLINGTON | County TOLLAND | | State CT | Zip Code 06279-2247 |
| Lender SANBORN CORPORATION | | | | |



**Comparable 1**
**28 LAUREL DRIVE**



**Comparable 2**
**23 LINDSAY LANE**



**Comparable 3**
**60 HALL HILL ROAD**

Form PIC3x5.BC — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

EXHIBIT 16

**Comparable Photo Page**

| | | | |
|---|---|---|---|
| Borrower/Client **CHRISTOPHER/MONICA LESTER** | | | |
| Property Address **24 LAUREL DRIVE** | | | |
| City **WILLINGTON** | County **TOLLAND** | State **CT** | Zip Code **06279-2247** |
| Lender **SANBORN CORPORATION** | | | |



**Comparable 1**
**28 LAUREL DRIVE**



**Comparable 2**
**23 LINDSAY LANE**



**Comparable 3**
**60 HALL HILL ROAD**

Form PIC3x5.BC — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

EXHIBIT 16

File No. 5-9016STI Page #5

**Flood Map**

| | | | | |
|---|---|---|---|---|
| Borrower/Client **CHRISTOPHER/MONICA LESTER** | | | | |
| Property Address **24 LAUREL DRIVE** | | | | |
| City **WILLINGTON** | County **TOLLAND** | State **CT** | Zip Code **06279-2247** | |
| Lender **SANBORN CORPORATION** | | | | |



Form MAP.FLOOD — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

EXHIBIT 16

VOL 1 5 8 PAGE 0 9 5 4

Schedule A

A certain piece or parcel of land, with the buildings and improvements thereon, situated in the Town of Willington, County of Tolland and State of Connecticut, being shown and designated as Lot No. 38 on a subdivision map entitled "Resubdivision Plan Lots 35 to 39 Laurel Estates Village Hill Road & Blair Road Willington, Connecticut Prepared For John Wittenzellner & Richard Pisciotta Sreenath & Symonds, P.O. Box 2074 Enfield, Connecticut 06082 Scale: 1" = 40' Drawing No: 3338 Date: 7-9-87 Sheet No. 4 Correct Subdivision Plan Revised 7/5/88  Rev. 5-3-88  Revised 11/5/87 & 11/18/87", which map or plan is on file with the Town Clerk of Willington.

EXHIBIT 16

File No. 5-9018STI Page #6

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

\* Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgement.

## STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:** The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

2. The appraiser has provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5. The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

6. The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

7. The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

8. The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

9. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

10. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

---

Freddie Mac Form 439 6-93                                      Page 1 of 2                                      Fannie Mae Form 1004B 6-93

O'Malley, O'Rourke & Bezz Appraisal Associates, Inc.
Form ACR — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

EXHIBIT 16

File No. 5-9016ST/ Page #7

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis and have made a dollar adjustment when appropriate to reflect the market reaction to those items of significant variation. If a significant item in a comparable property is superior to, or more favorable than, the subject property, I have made a negative adjustment to reduce the adjusted sales price of the comparable and, if a significant item in a comparable property is inferior to, or less favorable than the subject property, I have made a positive adjustment to increase the adjusted sales price of the comparable.

2. I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report. I have not knowingly withheld any significant information from the appraisal report and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

3. I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

4. I have no present or prospective interest in the property that is the subject to this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

5. I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

6. I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

7. I performed this appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of this appraisal, with the exception of the departure provision of those Standards, which does not apply. I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent with the marketing time noted in the neighborhood section of this report, unless I have otherwise stated in the reconciliation section.

8. I have personally inspected the interior and exterior areas of the subject property and the exterior of all properties listed as comparables in the appraisal report. I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them. I have also commented about the effect of the adverse conditions on the marketability of the subject property.

9. I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. If I relied on significant professional assistance from any individual or individuals in the performance of the appraisal or the preparation of the appraisal report, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the appraisal report, I will take no responsibility for it.

**SUPERVISORY APPRAISER'S CERTIFICATION:** If a supervisory appraiser signed the appraisal report, he or she certifies and agrees that: I directly supervise the appraiser who prepared the appraisal report, have reviewed the appraisal report, agree with the statements and conclusions of the appraiser, agree to be bound by the appraiser's certifications numbered 4 through 7 above, and am taking full responsibility for the appraisal and the appraisal report.

**ADDRESS OF PROPERTY APPRAISED:** 24 LAUREL DRIVE, WILLINGTON, CT 06279-2247

**APPRAISER:**

Signature:

Name: **THOMAS F. CLEARY**

Date Signed: **October 27, 2005**

State Certification #: **RCR.731**

or State License #:

State: **CT**

Expiration Date of Certification or License: **4/30/2006**

**SUPERVISORY APPRAISER (only if required):**

Signature:

Name: **SHAUN C. O'ROURKE**

Date Signed: **October 27, 2005**

State Certification #: **RCR.393**

or State License #:

State: **CT**

Expiration Date of Certification or License: **4/30/2006**

☐ Did    ☒ Did Not Inspect Property

Freddie Mac Form 439 6-93                Page 2 of 2                Fannie Mae Form 1004B 6-93

Form ACR — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

EXHIBIT 16