**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| CHRISTOPHER D. LESTER AND | : | NO.: 3:16-cv-00909-JAM |
| MONICA G. LESTER | : | |
| | : | |
| v. | : | |
| | : | |
| LIBERTY MUTUAL FIRE INSURANCE | : | : |
| COMPANY | : | December 15, 2017 |

### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The Plaintiffs, **CHRISTOPHER D. LESTER** and **MONICA G. LESTER**

("Plaintiffs")**,** in the above captioned matter respectfully submit the following objection to

the Defendant's, **LIBERTY MUTUAL FIRE INSURANCE COMPANY** ("Defendant"),

Motion for Summary Judgment dated October 25, 2017.

### RELEVANT FACTS

Plaintiffs filed a three count complaint dated May 2, 2016 against Defendant

regarding coverage issues for damage to concrete in their basement located at their

property at 24 Laurel Drive, Willington, Connecticut.  Count One alleges a claim for a

Breach of Contract.  Count Two alleges a Breach of Duty of Good Faith and Fair

Dealing.  Count Three alleges violations of the Connecticut Unfair Trade Practices Act

and the Connecticut Unfair Insurance Practices Act.  See Plaintiffs' Complaint.

Defendant provided homeowner's insurance coverage to the Plaintiffs for said

property.  Said policy provides, in relevant part, under "Section I – Perils Insured Against

– Coverage A – Dwelling and Coverage B – Other Structures – We insure against **risk of** direct loss to property described in Coverages A and B only if that loss is a physical loss to property."  Defendant's Memorandum of Law, p. 5 (emphasis added).

Further, under Section I - Property Coverages, Additional Coverages:

"**Reasonable Repairs**.  In the event that covered property is damaged by an applicable Peril Insured Against, we will pay the reasonable cost incurred by you for necessary measures taken solely to protect against further damage.  If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is  covered under this policy and the damage to that property is caused by an applicable Peril Insured Against."

Plaintiffs' Statement, ¶ 90.  This section further provides, in relevant part:

"**Collapse.**  We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following...

b.  Hidden decay;...

f.  Use of defective material or methods in construction, remodeling or renovation;...

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e, and f. unless the loss is the direct result of the collapse of a building.

Collapse does not include settling, cracking, shrinking, bulging or expansion."

Defendant's Memorandum of Law, p. 5-6.

Finally, under Section I – Exclusions, the policy also states:

"We do not insure for loss to property described in Coverages A and B caused by any of the following.  However, any **ensuing loss** to property described in Coverages A and B not excluded or excepted in this policy is covered...

**Faulty, inadequate or defective:**...

    (2)    Design, specifications, workmanship, repair, construction, renovation, remodeling, grading compaction;...

    (3)    Materials used in repair, construction, renovation, or remodeling... of part or all of any property whether on or off the 'residence premises.'

Id, p. 7-8 (emphasis added).

On or about October 5, 2015, William E. Neal, P.E., went to the property. He noted that there was a chemical reaction in the concrete and stated that the concreted needed to be replaced. See Plaintiffs' Statement, ¶¶ 4 and 95. This type of condition demonstrates that the cement is in the process of structural failure and that there is no way to stop this process. See id, ¶ 96. Mr. Neal further noted that this type of damage reduces the structure's ability to carry a load. See id, ¶ 97. The cost to fix the issue is $237,470.00. See id, ¶ 92. The Plaintiffs testified that they are not engineers, have not acted as a general contractor, and do not have a construction background. See id, ¶ 87.

On or about October 16, 2015, the Plaintiffs made a claim with the Defendant. See id, ¶ 3. On or about April 12, 2016, the Defendant denied coverage. The letter does not mention coverage provisions under Section I - Property Coverages, Additional Coverages of the policy for coverage of "reasonable repairs" nor does it mention that chemical reactions are not excluded by the policy. See id, ¶¶ 9 and 88. Nick Scaglione, hired by the Defendant, took core samples, noted the chemical reaction and further

stated that 36% of the aggregate was susceptible to this reaction. See id, ¶ 89. Paul Cianci, hired by the Defendant, also noted the chemical reaction. See id, ¶ 93.

## LAW AND ARGUMENT

### 1.    Standard of Review

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party bears the burden of proving that no factual issues exist. Vivenzio v. City of Syracuse, 611 F.3d 98, 106 (2d Cir. 2010). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought. Id. "If there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied." Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 315-16 (2d Cir. 2006) (quotation omitted). If the movant does satisfy this burden, then a "limited burden of production shifts to the nonmovant." Cobb v. Metro-North R. Co., 41 F.Supp.3d 145, 149 (D. Conn 2014). "The trial court's task is to 'carefully limited to discerning whether there are any genuine issues of material fact to be tried, not deciding them. Its duty, in short, is confined... to issue finding; it does not extend to issue resolution." Id, (citations omitted).

**2.    Plaintiffs have a Viable Claim for Collapse under the Policy, and Coverage Exists under "Reasonable Repairs" and "Ensuing Loss"**

The Defendant argues that the term "collapse" has been "negatively defined." Exclusions, such as "settling", "cracking" and "shrinking", per the Defendant, appears to be the standard for what could constitute (or, rather, does NOT constitute) a collapse, which essentially negates the Connecticut Supreme Court's decision in Beach v. Middlesex Mutual Assurance Co., 205 Conn. 246 (1987) (Beach).  See Defendant's Memorandum of Law, p. 10-11.  The Defendant's argument is without merit and has been addressed by the Federal Court in a similar case.  The cracking is a manifestation of the chemical reaction causing the walls deteriorate and these exceptions are in place in order to address everyday occurrences, such as wear and tear.  These exceptions were NOT intended rule out a catastrophic event, such as what is occurring in this case. See Agosti v. Merrimack, 3:16 cv 1686 SRU (August 29, 2017), p. 8-9 (attached) ("In Beach, the Connecticut Supreme Court held that an identically worded exclusion could 'reasonably be read to exclude loss related to 'settling, cracking, shrinkage, bulging and expansion,' only so long as 'collapse' d[id] not ensue.'  Beach, 205 Conn. 251.  The court reasoned that the policy in that case did not 'express a clear unambiguous intent to exclude coverage for a catastrophe that subsequently develop[ed] out of a loss that appeared, at its inception, to fall within the rubric of 'settling, shrinkage, bulging or expansion.'  Id., …  Thus, the [Plaintiffs'] claim does not fail merely because the impairment initially manifests itself as cracking").

On page 13 of its Memorandum of Law, the Defendant argues that there has been no impairment to the structural integrity of the building and it, therefore, did not collapse pursuant to the Connecticut Supreme Court's decision in the <u>Beach</u>.  <u>See</u> Defendant's Memorandum of Law, p. 13.  The Defendant contends that the property is not covered under the collapse provision of the policy.  <u>See</u> <u>id</u>, p. 16  This is largely based on selected portions of testimony from the Plaintiffs and their disclosed expert, compared to the Defendant's interpretation of the facts in <u>Beach</u>.

William E. Neal, P.E., noted that the property is suffering from a chemical reaction and the only remedy is to replace the concrete.  <u>See</u> Plaintiffs' Statement, ¶ 95.  Mr. Neal has testified in other cases that this type of damage shows that the cement is in the process of structural failure and that there is no way to stop it.  <u>See</u> <u>id</u>, ¶ 96. Also, this condition reduces the structure's ability to hold a load.  <u>See</u> <u>id</u>, ¶ 97.   Further, the Defendant's expert, Nick Scaglione, noted that 36% of the aggregate is made up of the reactive materials.  <u>Id</u>, ¶ 89.  These are exactly what the <u>Beach</u> decision would encompass as covered under the undefined term of "collapse" in the Defendant's policy.

A Connecticut Court dealt with a similar argument in the case of <u>Roy v. Liberty Mutual Fire Insurance Co.</u>, No. TTD CV 15 6009410 S (February 27, 2017) (<u>Roy</u>) (attached) , and noted that the Connecticut Supreme Court has "..held that the term 'collapse' is sufficiently ambiguous to include coverage for **<u>any</u> substantial impairment of the structural integrity of a building**."  <u>Id</u>, at p. 10, quoting <u>Beach</u>, <u>supra</u>, at 252

(emphasis in original).  Mr. Neal has adequately noted there is structural failure.  Any argument that Mr. Neal believes the concrete will last for 1,000 to 1,000,000 years based on his examination by opposing counsel is taken completely out of context.  See Defendant's Motion for Summary Judgment, Document 19-7, p. 28.  Mr. Scaglione noted that a large percentage of the aggregate contains the reactive material.  This testimony clearly demonstrates that there is an issue of fact as to "any substantial impairment of the structural integrity" of the home as per the Beach decision and summary judgment should not be granted.  See Roy supra, p. 13 (denied summary judgment on similar issue).

The term "collapse" is not defined in the policy, despite the arguments by the Defendant that it has been defined negatively.  See Defendant's Memorandum of Law, p. 5.  See also Roy, supra, at p. 8.  Any ambiguities in an insurance contract are construed in favor of the insured.  See Lexington Ins. Co. v. Lexington Healthcare Group, Inc., 309 Conn. 1, 9-10 (2013) (Lexington).  The Defendant argues that the Beach decision is not binding.  Apparently, the State of Connecticut does not agree since the Roy decision involved the very same policy under the very same set of circumstances.  Based on the Beach decision and the testimony from Mr. Neal, summary judgment should NOT be entered on this undefined term in the policy.

The Plaintiffs proffer that the chemical reaction is the "risk of direct physical loss to property" that warrants coverage.  See Defendant's Memorandum of Law, p. 5.  The

policy does not exclude chemical reactions. See id.  Compare Khuns v. Bay State Insurance Company, 866 N.Y.S.2d 92 (Supreme Court of New York, April 8, 2008) (attached) ("Accordingly, defendant has not shown as a matter of law that either the language of the policy excludes the plaintiff's claim, or that the cause is not factually within its inclusion as decay").  See Plaintiffs' Statement, ¶ 88.

Further, the Plaintiffs note that the policy employs the term "risk" before  "direct, physical loss to property".   The use of the term "risk" can reasonably be interpreted to expand what exactly is considered a "direct physical loss to property" under the policy. See 401 Fourth Street, Inc. v. Investors Insurance Group, 823 A.2d 177, 170 (Pa. Super. 2003) (attached) ("The use of the terms 'risks' and 'involving' clearly broaden the policy's coverage to include something less than a structure completely falling to the ground").  The use of the term "risk" essentially expands the policy terms and contemplates not only the chemical reaction itself, but risks associated with the occurrence of the chemical reaction such as a total collapse of the structure.  At the very least, failure to exclude chemical reactions and the use of the term "risk" raises sufficient factual issues that should be brought before a trier of fact.

The Policy, however, does provide a remedy to the Plaintiffs to cover the "risk" of physical loss contemplated by the Policy.  Under "Section I - Property Coverages... E. Additional Coverages... We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril

Insured Against from further damage." See Plaintiffs' Statement, ¶ 90. The Plaintiffs argue that since chemical reactions are covered perils, as well as the risks associated with the chemical reaction to the concrete, the cost to repair the concrete is covered pursuant to the terms of the policy, particularly to protect the property from "further damage".

Further, the Defendant's policy provides coverage for the ensuing loss as incurred by the Plaintiffs. See Defendant's Memorandum of Law, p. 7-8 ("...any ensuing loss to property described in Coverages A and B not precluded by any other provision in this policy is covered"). Thus, as the policy is written, coverage exists for the condition of the Plaintiffs' property.

**3. Connecticut Courts have NOT Adopted the Washington State Definition of Collapse.**

The Defendant argues that this Court should adopt the decision of Queen Anne Park Homeowners Assn v. State Farm Fire & Casualty Co., 352 P.3d 790 (Wash 2015) which defines collapse to require the substantial impairment to the structural integrity render the building "unfit for its function or unsafe." See Defendant's Memorandum of Law, p. 17. The Defendant further argues that "Beach did not intend for every crack in a wall to require jury resolution of whether there was a "collapse". See id, p. 20. This argument appears to be flatly rejected by this Court when it states "[t]he court declines to adopt and apply the Washington Supreme Court's definition of collapse, or the Ninth Circuit's application of that decision, because it is bound by the Connecticut Supreme

Court's long standing definition of 'collapse' that includes '**any** substantial impairment of the structural integrity of the building."  Roy, supra, at p 11 quoting Beach.  In this particular case, Mr. Neal notes that "[t]he ASR will continue to deteriorate the concrete and the basement walls will continue to bulge inward until they structurally fail.  There is no way to arrest the process and there is no way to repair the existing damage."  See Defendant's Motion for Summary Judgment, Document 19-3.  This Court stated in the Roy case:

> "The Washington courts appeared to conclude that no collapse could have occurred because the home was still standing and occupied.  The Beach court's definition of collapse does not require that the home be uninhabitable as demonstrated by the fact that the plaintiff in Beach remained living in the home. Additionally, in Beach, the plaintiff's expert indicated that the home would 'eventually' fall as the basement walls would be unable to hold up the structure. Here, the plaintiff remains living in the home and the plaintiff's expert has opined that the home has suffered a substantial impairment of its structural integrity and that the condition cannot be stopped and will worsen over time to the point of the walls falling in."

Roy, supra, at p. 12.  Further, in the case of Metsack v. Liberty Mutual Insurance Company, No. 3:14-cv-01150 (VLB) (February 21, 2017) (Metsack 2017) (attached), Judge Bryant also declined to apply the Washington State standard in Connecticut.  The Metsack 2017 decision referred to the decision in Belz v. Peerless Ins. Co., No. 3:13-cv-01315 (VAB) (September 2, 2016) (Belz) (attached) when it stated "'[t]he Court finds no reason to adopt Washington state law when the standard in Connecticut is relatively clear, nor is there a need for verifying this issue to the Connecticut Supreme Court.'... This Court sees no reason to deviate from this approach."  Metsack 2017, supra,

attached.  Belz, Metsack 2017, and Roy have all rejected the Washington State approach based on the Beach ruling and the Plaintiffs respectfully request that this Court also make a similar finding as the Beach standards are clear and there remains an issue of fact as to whether a collapse has occurred.

**4.      Mr. Neal is Qualified to Testify on the Subject Matter of this Case.**

The Defendant argues that the home is not in danger and that Mr. Neal is not qualified to render an opinion in this case.  See Defendant's Memorandum of Law, p. 20.  Mr. Neal is a structural engineer and can certainly note that the structural integrity of the building is compromised.  If he sees a specific form of cracking, then he can tell, as an engineer, if the structure is compromised.  Further, fortunately for all parties involved, the Defendant's expert, Mr. Scaglione noted that there is a chemical reaction going on in the concrete and that 36% of the aggregate contained the reactive materials. See Plaintiffs' Statement, ¶ 89.  When the structural integrity of the building is compromised, and the material that is causing it is contained in 36% of the aggregate, a jury can look at this and decide if there is a "risk of" physical loss, as covered by the policy, is occurring.

**5.      Water is Merely One Aspect of the Damage**

The Defendant's claims for water damage fail because the Plaintiff has alleged that a chemical reaction has occurred.  The water and oxygen mix with the reactive element to cause the issue.  See id, ¶ 93.  Water is not the cause of the collapse, the

chemical reaction is, as is alleged in the Plaintiffs' complaint.  <u>See</u> Plaintiffs' Complaint, ¶ 7. Further, the policy provides for "risk of direct physical loss" as well as collapse due to "hidden decay" and "defective materials", two provisions that specifically call for coverage. <u>See</u> Defendant's Memorandum of Law, p. 5-6.  As such, there is an issue of fact as to whether coverage is provided under the policy.

**6.    "Foundation" and "Retaining Walls" are Ambiguous terms per Numerous Connecticut State and Federal Cases**

The Defendant next argues that the terms "foundation" and "retaining walls" are not ambiguous.  This argument has been rejected many times in both the State and Federal Courts in Connecticut.  As a Connecticut Court notes in <u>Roy</u>, the language under collapse found in Section 1 – Property Coverage – Additional Coverages "..is circular, providing that the policy specifically covers losses due to the collapse of a building or part of a building from 'hidden decay' or 'defective material.'  This exclusion for foundation and retaining walls does not apply in the event of a 'collapse of a building.'  The court has previously found above that there exist questions of fact as to whether, and when, there has been a 'collapse' under the policy." <u>Roy</u>, <u>supra</u>, at p. 14. <u>See also</u> <u>Metsack v. Liberty Mutual Fire Insurance Company</u>, No. 3:14-cv-01150 (VLB) (September 30, 2015) (<u>Metsack</u> 2015) (attached) (terms "foundation" and "retaining wall" are ambiguous).  Both Judge Bryant and this Court note that this claim has been consistently rejected by Courts in the past.  <u>See</u> <u>Metsack</u> 2015 <u>supra</u> (noted this argument rejected three previous times); <u>see also</u> <u>Roy</u>, <u>supra</u>, p. 15-16 (lists six cases

where this argument was rejected).  This Court also notes ambiguity whether this exception includes items inside or outside the building under this section, thus further rendering these terms ambiguous.  See Roy, supra, at p. 14-15.

The Defendant's argument regarding extrinsic evidence is not persuasive at this point of the proceeding.  As Judge Hall noted that the term "foundation" was ambiguous since "...a person of ordinary intelligence could reasonably conclude... that the term 'foundation' refers to the piece of concrete at the base of the wall, rather than a concrete basement wall itself."  Bacewicz v. NGM Ins. Co., No. 3:08-cv-1530 (JCH) (August 2, 2010) (Bacewicz) (attached).   This is a clearly a question for a jury to determine what this term means and/or whether it is ambiguous especially in light of the court decisions in the State of Connecticut.

Finally, the Defendant's arguments that the Plaintiffs bear the burden of proving that there is coverage totally ignores the consistent court rulings that ambiguous terms should be construed in favor of the insured.  See Lexington, supra.  Based on this principal, the Plaintiffs can meet their burden in this case.  Ambiguous terms such as "collapse", "foundation" and "retaining walls" contained within the policy are sufficient to withstand a summary judgment.

**7. There is an Issue of fact Regarding a Breach of Duty of Good Faith and Fair Dealing**

There is an issue of fact with respect to whether there has been a breach of duty

of good faith and fair dealing with respect to the contract in issue.  A contract carries an implied duty "...requiring the neither party do anything that will injure the right of the other to receive the benefits of the agreement."  Gaudio v. Griffin Health Services Corp., 249 Conn. 523, 564 (1999).  "To constitute a breach of [the implied covenant of good faith and fair dealing], the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith." De La Concha of Hartford, Inc. v. Aetna Life Insurance Company, 269 Conn. 424, 433 (2004) (citations omitted).

> "Bad faith in general implies both actual and constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive.  Bad faith means more than mere negligence; it involves a dishonest purpose."

Habetz v. Condon, 224 Conn. 231, 237-38 (1992) (citations omitted).

The Plaintiffs have stated a sufficient claim for bad faith in this matter.  It has been alleged that the Defendant sought out other provisions in order to deny coverage. See Plaintiffs' Complaint, Count Two, ¶ 16.  There were other provisions willfully ignored by the Defendant that did provide coverage under the term "reasonable repairs" and the failure of the policy to exclude collapse.  See Plaintiff's Statement, ¶ 88.  All the elements have been met in the pleadings.  As such, the Plaintiffs' claim should stand and/or be left up to a jury to decide.

**8.      There is an Issue of fact Regarding a CUIPA AND CUTPA**

The Plaintiffs have stated a sufficient claim under CUIPA and CUTPA in Count Three.

"A plaintiff may assert a CUTPA claim based on a violation of CUIPA... To prevail on such a claim, the plaintiff must show that the defendant engaged in an act prohibited by CUIPA and the act proximately caused the plaintiff's harm... 'A Claim of unfair settlement practice under CUIPA/CUTPA requires the plaintiff to allege that the defendant has committed the alleged proscribed act with sufficient frequency to indicate a general business practice... The plaintiff must show more than a single act of insurance misconduct...'"

Gabriel v. Liberty Mutual, 3:14-cv-01435 (VAB) (attached).

"Connecticut courts, when determining whether a practice violates CUPTA, will consider (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statues, the common law, or otherwise--- whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers..."

Ancona v. Manafort Bros., Inc., 56 Conn. App. 701, 714 (2000).   "All three criteria do not need to be satisfied to support a finding of a violation of CUTPA." Hartford Electric Supply Co. v. Allen-Bradley Co., 250 Conn. 334, 367-368 (1999).  "CUPTA is remedial in character... and must be liberally construed in favor of those whom the legislature intended to benefit."  Service Road Corp. v. Quinn, 241 Conn. 630, 637 (1997).

As stated in the Plaintiffs' Complaint, there were provisions allowing for converge that the Defendant willfully ignored in order to deny coverage which has been done numerous times in other matters.  See Plaintiffs' Complaint, Count Three, ¶ 22.  The

Plaintiffs have plead all the proper elements under a CUIPA/CUTPA claim.  It has been alleged that the Defendant has conducted itself in a means in this, and similar matters, to deny coverage when it, in fact, exists.  Compare Roy, supra, at p. 17 (Upheld CUIPA/CUPTA claim in similar case where "...the Plaintiff alleges that the defendant engaged in an industry wide practice of denying coverage for concrete decay claims as part of its general business practice").  There are numerous cases on this very issue pertaining to this Defendant in various State and Federal Courts as noted in both the Roy and Metsack 2015.  As such, the Defendant's Motion for Summary Judgment should be denied on this Count.

**Conclusion**

For all of the above mentioned reasons, Plaintiffs respectfully object to Defendant's Motion for Summary Judgment dated October 25, 2017

PLAINTIFFS
CHRISTOPHER D. LESTER and
MONICA G. LESTER

By___414111_____
Brian D. Danforth, Esq.
Tolisano & Danforth, LLC
P.O. Box 676
Ellington, CT 06029
(860) 871-2422
Juris #: 428804
Their Attorney

## **CERTIFICATION**

This is to certify that on December 15, 2017 a copy of the foregoing Objection to Motion for Summary Judgment was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be send by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

Kieran W. Leary, Esq.
Howd and Ludorf, LLC
65 Wethersfield Avenue
Hartford, CT 06114
Telephone: (860) 249-1361
Facsimile: (860) 249-7665
E-mail: kleary@hl-law

　　　**/s/  Brian D. Danforth**

**Brian D. Danforth**